# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 1:24-CR-320 (JDB)** |
| | : | |
| **v.** | : | **18 U.S.C. § 111(a)(1) & (b)** |
| | : | |
| **EDWARD RICHMOND, JR.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Edward Richmond, Jr., with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### The Attack at the U.S. Capitol on January 6, 2021

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades as the defendant watched. Shortly thereafter, he entered the restricted area. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### The Defendant's Participation in the January 6, 2021, Capitol Riot

8.      On January 5, 2021, Edward Richmond, Jr. ("Richmond"), traveled to Washington, D.C. as part of a "security team" hired to accompany approximately nine individuals attending the rally held by former President Trump.

9.      On January 6, 2021, after attending the rally, the group made its way to the U.S. Capitol. While other members of the group returned to the hotel, Richmond instead made his way to the Capitol—wearing tactical gear, including a black helmet, tinted goggles, shoulder, elbow,

and knee pads, an orange two-way radio, and a camouflage vest with a patch on his chest of the Louisiana state flag.

10.    By approximately 3:15 PM, Richmond had made his way through the violent mob to the Lower West Terrace.  Once there, he approached the Lower West Terrace tunnel entrance (the "Tunnel"), where officers were attempting to hold the Capitol from rioters entering.

11.    Richmond stayed at the front of the mob fighting against police for almost two hours—from approximately 3:15 PM to 4:57 PM.  During this time, Richmond participated in the efforts against police inside the Tunnel, actively trying to break the police line and mounting multiple forms of attack on police.  Richmond carried a police riot shield, taken from police officers trying to defend the Capitol, from the Tunnel out into the mob and passed back police helmets to the mob as well.  Richmond helped take furniture from the Capitol out of broken windows.  Richmond also threw a white board into the Tunnel at officers, as well as carrying a large over-six-feet long wooden pole—positioning it against officers in the Tunnel. He also passed back to the crowd equipment taken from the police in the Tunnel—specifically, he passed back a police helmet and obtained a metal police baton taken from officers that he then wielded against them.

12.    At approximately 4:27 PM, Richmond witnessed as an officer was dragged from the Tunnel into the crowd and beaten by rioters on the ground with police batons and other instruments.

13.    By 4:57 PM, Richmond approached police line at the mouth of the Tunnel again and raised his baton up high—intending to attack officers. He brought the baton down on multiple officers, striking at them at least twice.

### *Elements of the Offense*

14.    The parties agree that Assaulting Certain Officers with a Deadly or Dangerous Weapon in violation of 18 U.S.C. § 111(a)(1) and (b) requires the following elements:

   a.  First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with officers from the Metropolitan Police Department.

   b.  Second, the defendant did such acts forcibly.

   c.  Third, the defendant did such acts voluntarily and intentionally.

   d.  Fourth, the persons assaulted, resisted, opposed, impeded, intimidated, or interfered with were assisting officers of the United States who were then engaged in the performance of their official duties.

   e.  Fifth, the defendant made physical contact with officers or acted with the intent to commit another felony.  For purposes of this element, "another felony" refers a violation of the civil disorder statute, 18 U.S.C. § 231(a)(3).  Fifth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon.

### *Defendant's Acknowledgments*

15.    The defendant knowingly and voluntarily admits to all the elements as set forth above.  Specifically, the defendant admits that he forcibly and intentionally assaulted officers of the Metropolitan Police Department who were assisting officers of the United States who were then engaged in the performance of their official duties.  Further, the defendant admits that his assault on officers involved physical contact and the intent to commit another felony, specifically, an act of civil disorder, in violation of 18 U.S.C. § 231(a)(3).  Finally, the defendant admits that he used a collapsible metal baton to commit the assault, and that the baton was a deadly or dangerous weapon, capable of causing serious bodily injury in the manner that Richmond used it.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Victoria A. Sheets*
        VICTORIA A. SHEETS
        Assistant United States Attorney
        District of Columbia
        NY Bar No. 5548623
        601 D Street, N.W.,
        Washington, D.C. 20001
        (202) 252-7566
        victoria.sheets@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Edward Richmond, Jr., have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: ___6-21-24___

_____
Edward Richmond, Jr.
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: ___6-21-24___

_____
John McLindon, Esq.
Attorney for Defendant