UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

      vs                               Docket No.:  1:24-CR-00320

EDWARD RICHMOND

**SENTENCING MEMORANDUM ON BEHALF OF EDWARD RICHMOND, JR.**

This Memorandum is submitted to the Court on behalf of Edward Richmond, who is scheduled to be sentenced by this Court on November 18, 2024.

Mr. Richmond pled guilty to one count of violating 18 U.S.C. §111. This is a Class C Felony. See 18 U.S.C. §3559. Mr. Richmond waived Grand Jury Indictment and was charged by way of a Bill of Information.

**UNITED STATES SENTENCING GUIDELINES**

This Court is well aware of the limited status of the United States Sentencing Guidelines in today's sentencing structure. They are the starting point to determine a sentence. *Gall v. United States*, 552 US 38 (2007). After a Court has determined that the guidelines have been calculated correctly—which includes ruling on all objections and making adjustments accordingly—the Court should then determine whether a departure is consistent with the Guidelines.

After the first two steps, the Court should then begin the analysis under 18 U.S.C. § 3553 (a) and determine whether a variance—a sentence outside of the advisory guideline range—is warranted. When the guidelines were mandatory, the only way a Court could impose a non-guideline sentence was by way of a departure. Now that the Guidelines are advisory, the Court may now sentence below a guideline range, i.e., grant a variant sentence. A "departure" diverges

from the originally calculated sentencing range for reasons contained in the Guidelines themselves. A "variance" diverges from the guideline range (including any departures) based on an exercise of the Court's discretion under 18 U.S.C. § 3553 (a). Many of the factors that Courts used for a departure under the Guidelines are now considered by Courts, with greater latitude for a variance, under 18 U.S.C. § 3553 (a). See *United States v. McBride*, 434 F.3d 470 (6th Cir. 2006).

Trial Courts are given much more discretion in imposing a variant sentence. The Guidelines are not mandatory, and they are not to be presumed reasonable. See *Nelson v. United States*, 555 US 350 (2009). The circumstances do not need to be "extraordinary" to justify a non-guideline sentence. See *United States v. Cavera*, 550 F.3d 180 (2nd Cir. 2008).

The Court is to impose a sentence sufficient but not greater than necessary to comply with § 3553 (a). Moreover, as this Court knows, 18 U.S.C. § 3582 mandates that the Court shall consider these factors to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correctional rehabilitation.

Having read the Presentence Report, this Court is familiar with the nature and circumstances of the offense. Mr. Richmond realizes the seriousness of his offense. He has accepted responsibility for his actions.

The history and characteristics of Edward Richmond are set forth, not only in the Presentence Report, but also in the letters from family and friends, which are attached to this Memorandum. [Exhibit A *in globo*].

Although Mr. Richmond has 3 criminal history points, they are for an event that happened in 2004 when he was 21 years old and serving in the Army in Iraq. It is a very old conviction, but unfortunately for Mr. Richmond, it does count because it falls just barely within the time limits set

forth in the United States Sentencing Guidelines.[1]

### EVENTS OF JANUARY 6TH

No doubt this Court is very familiar with the events of January 6, 2021, so there is no need to repeat them here. Edward Richmond did not show up in Washington, DC on January 6th with intent to attack the US Capitol. He was there to provide security to a lady identified in the Government's Application for Search Warrant as CW-1.[2] CW-1 told federal agents that due to her experience at a prior political rally, she arranged for a group of individuals to provide security for her and their companions.

As the Government acknowledged, Mr. Richmond was near the lower west terrace tunnel starting at about 3:15 p.m. However, others, (not Mr. Richmond)first started breaking through the police lines <u>two hours</u> earlier at 1:00 p.m. In the Application for the Search Warrant, the Government goes into detail about the events of January 6th. It reflects that at 2:00 p.m. people in the crowd forced their way over the barricades and shortly after 2:00 p.m. entered the Capitol Building. At 2:30 p.m., unknown subjects broke windows and pushed past the Capitol Police. As noted above, Mr. Richmond does not arrive until 3:15 p.m. and at no time did he go into the Capitol Building. He did not smash windows. He did not vandalize anything.

Nor did Mr. Richmond post anything on any social media, emails, podcasts, or the like, talking about, boasting, or bragging about what happened on January 6th. See for example the case

---

[1] USSG 4A.1.1 The sentence of Mr. Richmond was imposed more than fifteen years prior to his commencement of the instant offense. At first glance, this offense would not be counted. However, because Mr. Richmond's incarceration from the 2004 event extended into this 15 year period it would be counted. See USSG 4A.1.2(e).

[2] The Government obtained a search warrant for Mr. Richmond's apartment when he was arrested. Much of the information in this Memorandum comes from that search warrant.

of *United States v. Farilamb,* 535 F.Supp.3d 30 (2021) where the defendant made numerous posts on Facebook and other social media platforms, bragging, and boasting about what he did. He showed no remorse and said that he would do it again. The Government has put forth no evidence against Mr. Richmond along those lines. [3] Others who have been prosecuted in cases like this have done such things. Mr. Richmond did not. Federal prosecutors in Baton Rouge obtained a search warrant for Mr. Richmond's apartment in hopes that they would find some evidence of him participating in the January 6, 2021 events in Washington, DC. In their search warrant they cite 28 examples of other people who were arrested and whose residences were searched. In those examples the agents found things like MAGA hats, goggles, helmets, gloves, jackets, and other gear. A search of Mr. Richmond's apartment turned up none of those items.

While incarcerated on this case, Edward has made good use of his time. He has taken 10 different classes on his tablet/computer. The first six classes were taken on an app CypherWorx: 1) Adapting to Change; 2) Anger Management; 3) Diversity, Equity, and Inclusion; 4) Equal Opportunity 101 Corrections; 5) Offender Corrections, and 6) Offender Responsibility. [Attached as Exhibit B are copies of Certificates of Completion].

On another application called EDOVO Edward took the following classes: 1) Parenting While Incarcerated; 2) ART: Aggression Replacement Therapy; 3) How Can I Stop My Anger; 4) Anger Management. [4]

Edward Richmond is a talented mechanic and professional installer of solar panels.

---

[3] CW-1 posted pictures of herself on social media. Edward Richmond did not post any pictures on social media.

[4] Undersigned counsel has contacted Andrew Mazzuchelli, general counsel of for the District of Columbia Deaprment of Corrections seeking certificates for these classes. Mr. Mazzuchelli did send the certificates attached as Exhibit B. We are still awaiting the other certificates.

[Attached to this Memorandum as Exhibit C, are certificates showing his extensive training in this area.] He and his father run Baton Rouge Air, LLC which is certified by the Louisiana State Board of Contractors in electrical/mechanical, with a specialty in solar energy.

Mr. Richmond should be given a downward variant sentence in this case. He has demonstrated "super" acceptance of responsibility. On January 24, 2022, undersigned counsel was first contacted by Edward Richmond. Mr. Richmond had been made aware that the FBI was looking for him and he instructed me to reach out to the FBI to set up a meeting. On January 24th I sent an email FBI Special Agent Kaitlyn Carey. I also sent a subsequent email to another FBI Agent, Heang Ly. No one responded. Eighteen months later (June 20, 2023) I received notice that United States Attorney Victoria Sheets was trying to contact Mr. Richmond. I reached out to Ms. Sheets to introduce myself and reiterated once again that Mr. Richmond was available if they were interested in talking to him. Approximately 7 months later, without notice to Mr. Richmond or me, 20 to 25 agents showed up at his apartment and arrested him. Everyone agrees that he did not put up a fight or a struggle and he was polite and cooperative at all times. Also, as mentioned above, a search of his apartment did not find anything like, hats, goggles, gloves, MAGA hats, or anything else.

Between the vents of January 6, 2021 and the day of his arrest, Mr. Richmond led a productive life working as a solar panel technician and raising his son Zade by himself.[5] He deserves a downward variant sentence.

---

[5] Exhibit D – Stipulated Judgement (Richmond v. Richmond, The Family Court, 19th JDC, Case No. 223, 008, Div. C.)

## CONCLUSION

A Sentencing Court may consider without limitation any information concerning the background, character, and conduct of a defendant. See USSG § 1B1.4 and 18 U.S.C. § 3661. The Court can consider this information when determining whether and to what extent to sentence below an applicable guideline range. See USSG § 1B1.4 and comments thereunder.

As noted in *Gall, supra*, the Court must "consider every convicted person as an individual, and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

Respectfully Submitted by:

| | |
|---|---|
| */s/David E. Kindermann* | */s/ John S. McLindon* |
| DAVID E. KINDERMANN | JOHN S. MCLINDON |
| Jezic & Moyse | Attorney at Law |
| Bar ID 419242 | Louisiana State Bar No. 19703 |
| 50 Citizens's Way, Ste, 300 | 12345 Perkins Road, Bldg. 2 Ste 202 |
| Frederick, MD, 21701 | Baton Rouge, Louisiana 70810 |
| Office: 717-621-2799 | Office: (225) 408-0362 |
| Fax: 717-621-2681 | Cell:    (225) 603-6493 |
| Cell: 301-762-7900 | Email:  john@mclindonlaw.com |
| Email: dkindermann@jezicfirm.com | APPLICANT FOR ADMISSION |
| LOCAL COUNSEL | PRO HAC VICE |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum has been provided via electronic mail to: Andre Wilson, andre_wilson@dep.uscourts.gov, US Probation and Parole, and Victoria Sheets, victoria.sheets@usdoj.gov United States Assistant District Attorney, on this 11th day of November, 2024.

*/s/John S. McLindon*
JOHN S. MCLINDON